

**SO ORDERED.**

**SIGNED this 14th day of November, 2011.**



_____
Robert E. Nugent
United States Chief Bankruptcy Judge
_____

**PUBLISHED**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE:                                    )
                                          )
JOSEPH THOMAS WILLIS,                     )     Case No. 10-11985
SHERYL LYN WILLIS,                        )     Chapter 13
                                          )
        Debtors.                  )
_____ )
                                          )
IN RE:                                    )
                                          )
TROY SCOTT GARVER,                        )     Case No. 10-14249
JILL DENEEN GARVER,                       )     Chapter 13
                                          )
        Debtors.                  )
_____ )
                                          )
IN RE:                                    )
                                          )
JAMES JACOB ROHR,                         )     Case No. 10-11937
JUDY FAY ROHR,                            )     Chapter 13
                                          )
        Debtors.                  )
_____ )

-1-

| | |
|---|---|
| IN RE: | ) |
| | ) |
| | ) |
| **WILLIAM ALAN NEUVILLE,** | )  **Case No. 10-11976** |
| **NANCY SUE NEUVILLE,** | )  **Chapter 13** |
| | ) |
| **Debtors.** | ) |
| _____ | ) |

### <u>MEMORANDUM OPINION</u>

With the 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act came an amendment to § 1325's confirmation requirements, § 1325(a)(5)(B)(iii), that mandates that if a debtor's plan proposes periodic payments on certain secured claims, those proposed payments must be in equal monthly amounts. In these four cases, the debtors have followed a long-standing practice and proposed that their secured creditors be paid monthly, but in pro-rated amounts based upon the creditors' ratable shares of each monthly disbursement after deduction of the Trustee's fees, the debtors' attorney's fees, and other payments. The Court concludes that proposing pro-rated payments does not meet the "equal monthly amount" requirement and that where, as here, the affected creditors object to the ratable payments, the plans cannot be confirmed.

*Facts*

*Summaries of the Plans.*

In each of these four cases, the parties stipulated in the final pretrial order to the facts concerning the debtors' car loan transaction with the creditor, the proposed plan treatment of

the creditor's claim, and admissibility of the creditor's proof of claim.[1]  The Court conducted

confirmation hearings in all four cases on September 1, 2011.

In *Rohr*, the debtors propose to pay their creditors $600 per month over 36 months.[2]

Golden Plains Credit Union holds an allowed secured claim, secured by a motor vehicle that the

Rohrs propose to repay pro rata. Their attorney's fees would be paid at $200 per month over

12 months. Owing to the time delay in bringing these four cases to trial, the Rohrs have repaid

their secured claims in full as of the day of trial.[3]  In *Neuville*, the debtors propose a 60-month

plan with $1,100 monthly payments.[4]  Golden Plains holds a secured claim in this case. Unlike

in *Rohr*, this plan provides for the debtors' attorney's fees to be paid over the entire 60 month

period. But because these debtors are also attempting to repay their home mortgage payments

and a pre-petition mortgage arrearage through the plan, they provide for the car payment to be

made pro rata.[5]

In *Willis*, the debtors propose a 60-month plan with $1,500 monthly payments and again

provide for repayment of Golden Plains's claim pro rata with other secured creditors.[6]  Debtors'

---

[1]  *See Willis,* Dkt. 38; *Garver,* Dkt. 58; *Rohr,* Dkt. 46; *Neuville,* Dkt. 59.

[2]  *Rohr* Trustee Ex. E.

[3]  While litigation surrounding the equal monthly amount issue has developed, in the interest of efficient docket management, the Court has confirmed pro-rata plans subject to the determination of this issue.

[4]  *Neuville* Trustee Ex. G.

[5]  *See* D. Kan. Bankr. S.O. 09-2 (eff. Oct. 1, 2008) (governing when conduit mortgage payments must be made through the chapter 13 plan).

[6]  *Willis* Trustee Ex. E.

-3-

attorney's fees would be paid pro rata over the life of the plan. The Willises propose to pay their mortgage payment directly to the mortgagee. In *Garver*, the debtors' second amended plan proposes a 60-month plan with monthly payments of $1,245 and attorney's fees to be paid over 18 months.[7] Meritrust Credit Union and White Eagle Credit Union hold secured claims that are to be paid pro rata with other secured creditors.

### The Creditors' "Equal Monthly Amount" Objections.

Golden Plains, Meritrust, and White Eagle raise similar objections to their treatment in these plans.[8] They argue that the proposed payments they will receive under these plans will not be in "equal monthly amounts" because those amounts will necessarily change from month to month depending on how much the debtors pay in and whether other claims, such as those for attorney's fees, are paid before disbursement to the secured creditors. The Trustee proved that pro rata distribution is often beneficial to both creditors and debtors because it frequently results in claims being paid sooner than they would in a fixed payment plan. That saves the debtor interest expense and frees up money for distribution to the unsecured creditors. But the secured creditors presented evidence of wide fluctuations in the payments they receive and that those fluctuations require them to manually record and credit these payments which raises concerns with their regulators when the institutions are examined. And, the secured creditors showed that they cannot determine from a review of the pro rata plans what they will receive, rendering it

---

[7] *Garver* Trustee Ex. F. Debtor's original plan proposed monthly payments of $2,080 and their first amended plan proposed $1,590 monthly payments.

[8] *Rohr,* Dkt. 18*; Neuville,* Dkt. 13*; Willis,* Dkt. 20*; Garver,* Dkt. 22 (White Eagle objection). Meritrust did not file an objection to confirmation in *Garver.*

impossible to make a meaningful decision about whether to accept the plans or to object.

### How the Trustee Disburses on Pro-rata Plans.

When the debtor's plan provides for pro rata payments to secured creditors, the Trustee disburses funds to those creditors only after deducting certain amounts from what she receives from the debtor or his employer. Each of these plans follows the District of Kansas model form plan[9] and specifies at § 3 that the Trustee will receive up to 10 percent of what she disburses as a fee. Section 3 also sets out the amount of the debtors' attorney's fees and the length of period in which they will be paid. Section 10 of the plans provides the manner in which personal property secured debts are treated. The creditors will retain their liens and will be paid "monthly payments as set forth below *from the funds available to pay those claims after the deduction of Trustee fees*."[10] If the monthly payment to a creditor is "not feasible" by $25 or less, the Trustee may adjust the payment up or down "to make the payment feasible." Sections 10.c. and 10.d. specify that creditors will receive a "Monthly Payment" that is "the amount of adequate protection to be paid each month as if the plan were confirmed." It also states that "the Monthly Payment is an estimate [that may] vary, depending upon the allowed claim."[11]

Before the Trustee makes a prorated disbursement, however, she deducts more than just her fees from the debtors' plan payment. Although these deductions are not mentioned in the plan, payments to cure postpetition mortgage arrearages are deducted and paid first as

---

[9]  D. Kan. Bankr. S.O. 10-2 (eff. Mar. 1, 2011) (adopting form Chapter 13 plan).

[10]  *See Neuville* Trustee Ex. G, p. 17 (emphasis added).

[11]  *Id.*, p. 18.

-5-

administrative expense.[12] Then the Trustee pays and deducts any current home mortgage payment that is due.[13] Finally, the Trustee allocates and disburses the remaining funds pro rata among the secured claims of the home mortgagee for its prepetition arrearage and the other secured creditors based on the amounts of their respective claims in proportion to the total secured claims remaining.

All of this provides for flexibility of administration because, as the Trustee points out, the debtors' estimates of the home mortgage arrearage and amounts of the secured creditor claims may differ from the actual allowed amounts. Plus, the amounts the debtors pay are not always the same every month because of varying pay periods, absenteeism, illness, job loss, and other causes that may interrupt plan payments. Proration permits the Trustee to vary all but the payments to the home mortgage lender to allow for these variances. But this flexibility does not come without cost. As shown at trial, it results in secured creditors receiving wildly fluctuating amounts each month that change with the debtor's inflows, attorney's fees payments, and arrearage amounts. In *Rohr*, for instance, Golden Plains received payments of as little as $68.06 and up to $346.94. In *Neuville*, it received payments ranging from $18 to $237 and for three months, no payments at all. In *Willis*, Golden Plans received payments ranging from $337.55 to $1,033.07. White Eagle received payments in *Garver* that ranged from $756 to $2,189.

Further, it is nearly impossible for a creditor to determine just what payments it may

---

[12] The form plan incorporates S.O. 09-2 regarding conduit mortgage payments, which in turn provides for post-petition mortgage arrears to be paid as an administrative expense. *See* S.O. 09-2, § V.B and S.O. 10-2, Form Plan, § 9.

[13] In general, § 1322(b)(2) bars the modification of home mortgage payments.

expect to receive under a pro rata plan because of the open-ended nature of the deductions taken before disbursement. For example, the plan provides that the Trustee will deduct her fee of "up to 10 percent" before disbursing. Presently the Trustee withholds eight percent, but that is not stated anywhere in the plan. To learn which other creditors will share in the proration, the creditor would need to read section 9 of the plan (and S.O. 09-2 incorporated therein) to learn that the two-payment postpetition mortgage arrearage will be paid as an administrative expense while the prepetition mortgage arrears will be paid pro rata with the other creditors. Even then, the creditor would have difficulty calculating what prorate it would receive, casting doubt on whether the creditor's interest in its collateral will be adequately protected.

In the *Rohr* plan, for instance, a creditor would start with the $600 plan payment. It would deduct the eight percent trustee's fee and the $200 per month attorney's fee allowance for a remainder of $352. The remainder would then be prorated between Golden Plains's $3,500 debt and First National Bank's $500 debt, 87.5 percent payable to Golden Plains and 12.5 percent to First National Bank. Once the twelve months of attorney's fees have been paid, the creditor could project how its share of the $600 payment might change. This relatively simple calculation becomes more complex when, as in *Neuville*, the debtors propose to pay their home mortgage through the plan. This alone generates three types of payable claims: the ongoing monthly contract mortgage payment, the pre-petition arrearage payment, and the two-payment post-petition arrearage that occurs by virtue of the operation of this District's conduit mortgage rule.[14]

---

[14] *See* D. Kan. Bankr. S.O. 09-2, §V.B., providing that the first two mortgage payments due after the petition date are not paid by the Trustee to the lender and become part of the post-petition arrearage that is treated as an administrative expense.

The Neuvilles' attorney agreed to take his fee over the life of the plan, not in twelve installments. Performing the disbursement calculation requires the Trustee to deduct from funds received from the debtor in a given month her fee, 1/60th of the attorney's fee, the current mortgage payment, and a portion of the post-petition arrears payment before pro-rating the remainder among the various other secured creditors. Of these deductions, not all amounts can be extracted from the Neuvilles' plan.

In many cases, pro rata payment of these claims may result in them being fully paid sooner than they would be under an amortized payment scheme. This occurs because, as in *Rohr* and *Garver*, the debtors' attorneys will receive their funds in the first twelve or eighteen months, and disbursement to the prorated creditors will increase after the attorneys payment period has passed. It may also be due to the Trustee's Case-Power © software that directs payment of funds remaining after application of the fixed payments and fees to the secured creditors and automatically applies past-due fixed payments before current ones. If secured payments are paid before their contract term, the debtor pays less interest, leaving more funds for the unsecured creditors. This result benefits everyone except, of course, the secured creditor who loses the yield it expected to make on the moneys it lent the debtor.

### Additional Creditor Issues.

Golden Plains, Meritrust, and White Eagle are regulated credit unions who must routinely answer to regulators. When they book inconsistent or sporadic payments, the quality of these loans are questioned, potentially leading regulators to require the credit unions to charge them off. These unequal payments must be entered manually, creating extra work for credit union

-8-

employees. And the officers cannot divine from the plans what payments they will receive.

The credit union employees who testified all agreed that they were could not ascertain from the debtors' plans what their institutions would receive. They agreed that in the absence of documentation (like a court order) that justifies accepting a payment that is different from the agreed note payment, regulators may criticize or write off the loan resulting in devaluing the loan on the lender's books. But if a plan provides for a fixed payment that is confirmed by court order, the loan will not be questioned as long as the payments continue. The witnesses also stated that even a provision for minimum payments that could be programmed into the credit union's system would be preferable to receiving prorated payments in indeterminate amounts.

### Analysis

### Plans That Do Not Provide Equal Monthly Amounts Violate § 1325(a)(5)(B)(iii).

Pro rata payments to secured creditors may serve the salutary goals of being administratively convenient, providing quicker repayment to secured creditors, and enhancing the unsecured creditors' dividend. Fixed payment plans are easier for lenders to understand and record. But what really matters in these cases is whether these plans propose payments that comply with § 1325(a)(5). They don't.

What the plan must "provide" in order to be confirmed is set out in § 1325(a)(5). It states–

(a) Except as provided in subsection (b), the court shall confirm a plan if–

\* \* \*

(5) with respect to each allowed secured claim *provided for* by the plan–

\* \* \*

-9-

(B)(I) the plan provides that--

    (I) the holder of such claim retain the lien securing such claim until the earlier of--

        (aa) the payment of the underlying debt determined under nonbankruptcy law; or

        (bb) discharge under section 1328; and

    (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

    (iii) if--

        (I) property to be distributed pursuant to this subsection is in the form of periodic payments, *such payments shall be in equal monthly amounts*; and

        (II) the holder of the claim is secured by personal property, the amount of *such payments* shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; . . . .[15]

Thus, a secured creditor's treatment under the plan may be confirmed if (1) the creditor retains its lien; (2) the creditor will receive property having the value of its collateral as of the effective date of the plan;[16] and (3) if the distribution of that property is in periodic payments, the payments are in equal monthly amounts. If the claim being treated is one that is secured by

---

[15]  11 U.S.C. § 1325(a)(5) (West, 2011) [emphasis added].

[16]  *See* § 506(a)(1) providing that an allowed claim may be bifurcated into a secured portion up to the value of the collateral and an unsecured portion for the balance of the claim.

-10-

personal property, the periodic payments may not be less than enough to provide the creditor adequate protection during the plan term.

### Periodic Payments Must be in Equal Amounts.

The first clause, § 1325(a)(5)(B)(ii), requires that the value of property distributed to the creditor under the plan not be less than the allowed amount of the claim while the second clause, § 1325(a)(5)(B)(iii)(I), provides that if that property is to be distributed in periodic payments, they must be in equal amounts. Clause (iii)(II) merely adds that if the security is personal property, the payments must be sufficient to adequately protect the collateral, in other words, compensate the creditor for collateral depreciation over the life of the plan. Notably, both clauses (I) and (II) of § 1325(a)(5)(B)(iii) refer back to the "periodic payments" by using the language "such payments," indicating that periodic payments must be both equal monthly amounts and provide adequate protection.

When the requirement that payments be in "equal monthly amounts" was added by Congress in 2005, the House Report simply stated that the amendment "require[d] that periodic payments . . . with respect to a secured claim be made in equal monthly installments."[17] Norton's bankruptcy treatise says that the provision was "intended to reverse the holding of several courts that had confirmed chapter 13 plans over the objection of creditors, that had deferred the distribution to secured claim holders for some period of time, usually to pay administrative claims such as attorneys fees."[18]

---

[17] H.R. Rep. No. 109-31, at 85 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 141.

[18] 7 NORTON BANKR. LAW AND PRAC. 3d, 151:14, p. 151-95. *See, e.g, In re Moses*, 293 B.R. 711 (Bankr. E.D. Mich. 2003).

The meaning of the words "equal monthly amounts" has been the topic of a number of reported bankruptcy court cases since 2005. Judges Lundin and Brown make the categorical statement in their treatise that:

> The new equal monthly payment requirement will also prohibit the practice of providing "pro rata" distribution to secured claim holders from whatever funds are available each month after distributions to claims with higher priority. In a pro rata distribution scheme, the amount distributed to each secured claim holder may vary from month to month and would be equal only by happenstance.[19]

Anticipating the present controversy, they note that a number of courts have concluded that the stream of equal monthly payments need not commence at confirmation and that the debtor may offer a lower payment to secured creditors while the attorneys fees are being paid so long as what the creditor receives is sufficient to provide it adequate protection. They refer to this two-tiered payment practice as "an elegant accommodation."[20]

In *In re DeSardi*, the court held that the equal monthly amount clause only requires that payments to a creditor be equal once they begin and must continue to be equal until they cease and that the clause does not apply to adequate protection payments before the equal payment stream commences.[21] Several other courts have reached a similar conclusion.[22] The Trustee urges me to follow *DeSardi*.

---

[19]  Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4ᵀᴴ EDITION, § 448.1, at ¶ 12, SEC. REV. July 12, 2007, www.Ch13online.com.

[20]  *Id.* at ¶¶ 13 and 17.

[21]  340 B.R. 790, 805-07 (Bankr. S.D. Tex. 2006).

[22]  *See In re Lemieux*, 347 B.R. 460 (Bankr. D. Mass. 2006); *In re Marks,* 394 B.R. 198 (Bankr. N.D. Ill. 2008); *In re Butler,* 403 B.R. 5 (Bankr. W.D. Ark. 2009); *In re Hill,* 397 B.R. 259 (Bankr. M.D.N.C. 2007); *In re Erwin,* 376 B.R. 897 (Bankr. C.D. Ill. 2007).

Case 10-11985   Doc# 67   Filed 11/15/11   Page 12 of 16

But other courts take the opposite view. In *In re Denton*, the court held that equal monthly payments must begin after confirmation and are not to be manipulated to accommodate attorneys' fees.[23] This is the view that most clearly follows the plain language of § 1325(a)(5)(B)(iii). The *Denton* line of cases holds that the equal monthly amount requirement applies to all post-confirmation recurring payments on allowed secured claims, whether denominated as adequate protection payments or as amortized payments.[24] These courts correctly observe that the "periodic payments" reference in § 1325(a)(5)(B)(iii)(I) does not distinguish between adequate protection payments and amortized debt payments. While *DeSardi*'s effort to differentiate post confirmation payments on secured claims and create tiered payment amounts is an "elegant accommodation," it is not authorized by the language in § 1325(a)(5)(B)(iii)(I).

### *Attorney's Fees Need Not Be Paid in Full in Chapter 13 Before Secured Creditors Are Paid.*

Nothing in § 1322 requires the chapter 13 plan to provide for the full payment of debtors' attorney's fees before payment of secured claims. The debtors' attorney's fees are administrative expenses under § 503(b)(2) and priority claims under § 507(a)(2). Section 1322(a)(2) merely requires that a chapter 13 plan provide for full payment of § 507 priority

---

23 370 B.R. 441, 445-46 (Bankr. S.D. Ga. 2007). *See also In re Sanchez,* 384 B.R. 574 (Bankr. D. Or. 2008); *In re Espinoza,* 2008 WL 2954282 (Bankr. D. Utah Aug. 1, 2008) (periodic payments to a creditor on an allowed secured claim refers to all regularly-recurring post-confirmation payments; rejected two tiered payment plan one tier characterized as adequate protection payments and one tier characterized as periodic monthly payments); *In re Henning,* 420 B.R. 773 (Bankr. W.D. Tenn. 2009); *In re Williams,* 385 B.R. 468 (Bankr. S.D. Ga. 2008).

24 *Denton, supra* at 445-46.

claims, not that they be paid before other claims.[25] Section 1322(a)(2) expressly contemplates "deferred cash payments"– payments over time. The question of their distribution priority in chapter 13 is settled by § 1326(b)(1) which states that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid – (1) any unpaid *claim* of the kind specified in section 507(a)(2)."  Section 1326(b)(1) simply means that those priority claims may be paid before other creditors are paid *or* at the same time.[26]

In the cases upon which the Trustee relies, the courts focus on the omission of the "period of the plan" language in (iii)(I) to hold that amortizing payments to the secured creditor need not commence until after the attorney's fees are paid. But "period of the plan" in (iii)(II) defines the period of time during which the payments must provide adequate protection if the collateral is personal property. The distribution of property in equal monthly amounts referred to in (iii)(I) should begin upon confirmation in order to return to the secured creditor the value of the property securing the claim "as of the effective date." And, delay in distributing to secured

---

[25]  The statute does not refer to administrative *expenses* entitled to priority under § 507(a)(2), though the Court notes that similar references to § 507(a)(2) attorney's fees allowances as "claims" are found in § 1129(a)(9) and § 1222(a)(2). *See* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 99.1, at ¶s 3-4, SEC. REV. May 17, 2010, www.Ch13online.com (recognizing this nuance in the language of § 1322(a)(2)).

[26]  *See In re Bosse,* 407 B.R. 444 (Bankr. D. Me. 2009) (Section 1326(b)(1) does not require full payment of administrative expenses prior to distribution to secured creditors; they may be paid concurrently; debtors could not suspend secured claim payments to pay attorney's fees.); *In re Balderas,* 328 B.R. 707, 717-18 (Bankr. W.D. Tex. 2005) (construing the "before or at the time of" language in § 1326(b)(1) and concluding that payout of claims having priority under § 507 can occur along with payments to creditors under the plan); *In re Bellamy,* 379 B.R. 86 (Bankr. D. Md. 2007) (Section 1326(b)(1) does not require payment in full of allowed and outstanding administrative expenses, including debtor's attorney's fees, before distributions to other claimants). *See also,* § 1322(b)(4) which allows a plan to provided for payments on unsecured claims concurrently with payment on secured claims.

-14-

creditors in order to first accommodate payment of debtor's attorney's fees would ignore §
1326(a)(2)'s requirement that upon confirmation of the plan, "the trustee shall distribute any
such payment [the debtor's plan payment to the trustee] *in accordance with the plan* as soon as is
practicable," along with the further requirement of § 1326(c) that "except as otherwise provided
in the plan or in the order confirming the plan, the trustee shall make payments to creditors
under the plan."

### *The Secured Creditor Payments under These Plans Can Never Be Equal.*

Simple arithmetic proves that the creditor's payments will change when the amounts
deducted before the proration change. Turning to what the plans "provide" in these cases, the
plans in *Rohr* and *Garver* clearly do not propose an equal monthly amount be paid to the car
creditors because both plans provide that debtors' attorney's fees be paid a fixed amount over
a number of months that is less than the plan term. When those fees are paid, the payments to
secured creditors will necessarily increase. Both plans in *Newville* and *Willis* provide for attorneys
fees to be paid over the life of the plan. Even so, the plans in these two cases do not specifically
provide what amounts will be deducted from the funds received by the Trustee from the debtor
before the proration is applied. That information could only be gleaned from detailed
examination of the Trustee's witness. Standing alone, the plans fail to "provide" that the
objecting creditors will receive payments in equal monthly amounts.

### <u>Conclusion</u>

Today's conclusions run counter to a practice that many debtors, creditors and trustees
have accepted in this and many other districts. But that fact does not justify this Court's ignoring

-15-

the plain meaning of § 1325(a)(5)(B) in the face of a creditor's objection. The Court can imagine a number of practical solutions for the problems this Order may pose. Plans could be drafted in a way that discloses to secured creditors an estimate of their anticipated pro rata payment and how that amount was calculated. Or, debtors could propose to pay creditors not less than a set amount every month, so long as that amount is sufficient to provide the creditor adequate protection. No doubt these are but two of many solutions that will be devised by imaginative and creative counsel.

Confirmation of the plans in *Garver*, *Neuville* and *Willis* is DENIED. The plans in these cases do not provide these objecting creditors with periodic payments in equal monthly amounts.

Because the objecting creditor's claim in *Rohr* has been paid in full, the creditor's objection is OVERRULED AS MOOT.

Except in the *Rohr* case, the debtors shall amend their plans for presentation to the Court on January 11, 2012 at 1:30 p.m. or their cases may be dismissed.

# # #